## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| EMEL SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 06-3146-KHV** |
| L. E. BRUCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

### MEMORANDUM AND ORDER

Under 42 U.S.C. § 1983, Emel Smith, *pro se*, brings suit against L.E. Bruce, warden of the state correctional facility at Hutchinson, Kansas, Aramark, Inc. and Doug Neuschafer, former Aramark food service manager, alleging a violation of the First Amendment.[1]  This matter comes before the Court on the Motion For Summary Judgment (Doc. #56) which Warden Bruce filed June 6, 2007.  For reasons stated below, the Court sustains the motion.

### Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than

---

[1]     The Court previously dismissed plaintiff's claims under the Eighth and Fourteenth Amendments for failure to state a claim on which relief can be granted.  See Memorandum And Order (Doc. #26) filed March 23, 2007 at 3.

a mere scintilla of evidence.  <u>Id.</u> at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hicks v. City of Watonga</u>, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on his pleadings but must set forth specific facts.  <u>Applied Genetics</u>, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment.  <u>Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.</u>, 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  <u>Anderson</u>, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988).

### Factual Background

The following material facts are uncontroverted.[2]

---

[2]    Plaintiff does not respond to defendant's statement of facts, which the Court finds are properly supported under Rule 56(e), Fed. R. Civ. P., and accepts as uncontroverted.  <u>See</u> <u>Ellibee v. Hazlett</u>, No. 03-3023-JAR, 2006 WL 3050801, at *2 (D. Kan. Oct. 23, 2006) (pro se litigants governed by same procedural rules as other litigants; on summary judgment, Court accepts as true facts which pro se litigant does not controvert).  As necessary, the Court also incorporates facts from plaintiff's complaint – which he filed under penalty of perjury – and the report which the Hutchinson
(continued...)

From October of 2001 until May of 2005, the Kansas Department of Corrections ("DOC") incarcerated plaintiff at the state correctional facility at Hutchinson, Kansas.  DOC contracts with Aramark to provide food to state correctional facilities, including the Hutchinson facility.  Under DOC policy, food service operations follow a standardized menu which satisfies basic nutritional requirements and accommodates modified diets for medical, dental, mental health and religious purposes.  Inmates who are approved for a modified diet for religious reasons receive meals which are consistent with the approved religious diet menu.  The vegetarian menu, which is approved by a registered dietitian, has a meal pattern consisting of nuts, vegetables, fruits, legumes, grains, eggs and milk products.  At Hutchinson, Aramark serves gelatin as part of its vegetarian diet.  Generally, one of two firming agents is used to prepare the gelatin: Gelatin Type B, which is derived from animal byproducts and is not consistent with a vegetarian diet, or carrageenan, which is derived from seaweed and is consistent with a vegetarian diet.

In December of 2003, the prison chaplain authorized plaintiff to receive a vegetarian diet in accordance with his religious beliefs.  On March 4, 2005, plaintiff filed a grievance which stated that "Aramark has been [giving] us meat on the vegetarian diet w[h]ich is Gelatin."  Plaintiff attached to this grievance the label from a box of gelatin (purportedly served at the prison) which included Gelatin Type B and various documents which described gelatin as derived from animal by-products.  On March 21, 2005, Aramark food service manager Neuschafer responded to plaintiff's grievance as follows: "[t]he gelatin mix that is used at the Hutchinson Correctional Facility is from a company called

---

[2](...continued)

Correctional Facility prepared pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).  See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (Martinez report treated as affidavit; complaint treated as affidavit to extent it alleges facts based on plaintiff's personal knowledge and is sworn under penalty of perjury).

Gilster-Mary Lee.  The ingredients in the mix are as follows: Sugar, Dextrose, Gelatin Type B, Sodium Citrate, Fumaric Acid, natural and Artificial Flavor, Tricalcium Phosphate, Color (Red 40)."  Neuschafer concluded that the mix had been approved by State of Kansas dieticians to be "favorable to the vegetarian diet."  Neuschafer recommended that no further action be taken.

On April 25, 2005, plaintiff filed a second grievance which complained that Aramark was serving gelatin which was a meat product.  Plaintiff again attached documents describing gelatin as an animal derivative.  The same day, Neuschafer issued a response which stated that "Aramark uses a purveyor that manufactures a non-animal product gelatin.  The gelatin that is served does not contain any animal by-products in its ingredients. . . . The gelatin that is served is a vegetarian friendly food product and can be consumed by any vegetarian participant.  It has been approved by the state of Kansas Department of Corrections as a viable vegetarian meal item."[3]

Plaintiff appealed the matter to Warden Bruce.  Warden Bruce received the appeal on June 2, 2005, and on June 21, 2005, concluded that the gelatin was manufactured with non-animal product and met the qualifications of the DOC contract with Aramark.  Warden Bruce concluded that Aramark was in compliance with established standards.  Through affidavit, Warden Bruce states that when he reviewed plaintiff's grievance, he did not understand the distinction between Gelatin Type B and

---

[3]     Neuschafer left employment at the Hutchinson facility on April 28, 2005.  Rusty Anderson replaced him as Director of Food Services.  Through affidavit, Anderson states that

> . . . I have been employed by [Aramark] at the Hutchinson Correctional Facility . . . since May 10, 2005. . . . At all times since working at this facility, the gelatin served to inmates has been the type which uses no animal byproducts and uses a seaweed product called carrageenan as the agent which causes the gelatin to set up and to become a Jello-like product.

Affidavit of Rusty Anderson, attached as Exhibit 3 to Martinez Report (Doc. #16) filed January 8, 2007 ¶¶ 1, 3.

carrageenan and he relied on the expertise of the state dietician and the senior food supervisor in responding to the grievance. Warden Bruce further states that he is not involved in developing inmate diets or reviewing the nutritional content of the foods which inmates consume. State dieticians control such matters and implement their decisions through food service contracts with Aramark. Warden Bruce is responsible for ensuring that Aramark provides food which complies with DOC mandates to inmates at Hutchinson.

Plaintiff then appealed the Warden's decision to the Secretary of Corrections, arguing that Warden Bruce "[s]hould have invest[i]gated Gelatin type B, w[h]ich is made from Animal Skin and Bones." On June 29, 2005, the Secretary of Corrections responded as follows:

> Mr. Smith claims that he is being denied access to an appropriate Presbyterian diet. He claims that the gelatin that is served contains animal matter. In support of his claim, he supplies what he claims to be the label off of some gelatin that is served in the HCF food service area.
>
> We contacted the KDOC Food Service Contract Monitor for information regarding this grievance. We have been advised that at one time, different gelatin products were used for the vegetarian and regular diets. The vegetarian diet has always used a gelatin that is not based on animal products.
>
> At the present time, only one type of gelatin is used at HCF. This gelatin product is carrageenan, which contains no animal products.

Through affidavit, DOC deputy warden William Cummings explained this response as follows:

> I came to understand that the Hutchinson Correctional Facility had previously utilized two types of gelatin product, one for inmates on regular diet and another for those on vegetarian diet, but that the process had been changed to simplify the serving process.
>
> I did respond to [plaintiff's] grievance . . . on June 29, 2005 and indicated that . . . as of the date of the response, only one type of gelatin was being served at the Hutchinson Correctional Facility, which was vegetarian gelatin.
>
> It did not appear that as of March 31, 2005 any gelatin containing animal byproducts was available to be served at the Hutchinson Correctional Facility, although there was no way to be certain since I was reviewing the grievance in late June of 2006. I would speculate

that the nutritional facts documents possessed by Mr. Smith was obtained during the time that gelatin containing Type B gelatin was still being served or that it was simply an old package that was not being used. Of course, that is all speculation.

The Department of Corrections, generally, and the Hutchinson Correctional Facility, specifically, are very cautious about complying with the requirements for special diets and it is exceeding[ly] unlikely, assuming that the gelatin containing Type B gelatin was served to petitioner at any time while he was on special diet, that it would have occurred intentionally.

<u>Affidavit of William Cummings</u>, attached as Exhibit 5 to <u>Martinez Report</u> (Doc. #16) ¶¶ 3-6.

Liberally construing the complaint, plaintiff claims that Warden Bruce violated his First Amendment right to freedom of religion by allowing Aramark to serve Gelatin Type B which was inconsistent with the vegetarian diet which he subscribed to as part of his religious beliefs. Warden Bruce seeks summary judgment on the basis of qualified immunity.

## **Analysis**

Plaintiff claims that Warden Bruce violated his First Amendment right to freedom of religion by allowing Aramark to serve him Gelatin Type B. Warden Bruce argues that he is entitled to summary judgment on the basis of qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Gross v. Pirtle</u>, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341(1986)). Once qualified immunity has been raised, plaintiff bears the heavy burden of establishing that (1) defendant's actions violated a constitutional or statutory right and (2) the right was "clearly established" at the time of the relevant conduct. <u>Serna v. Colo. Dep't of Corr.</u>, 455 F.3d 1146, 1150 (10th Cir. 2006) (citing

Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)). If plaintiff satisfies this two-part burden, defendant must demonstrate that his actions were objectively reasonable in light of the law and the information he possessed at the time of the claimed violation. See Martin v. Bd. of County Comm'rs, 909 F.2d 402, 405 (10th Cir. 1990). Qualified immunity will only relieve defendant of individual liability.[4] Harlow, 457 U.S. at 818.

Here, plaintiff has not come forth with evidence sufficient to create a genuine issue of material fact whether Warden Bruce violated his First Amendment right to freedom of religion. Under Tenth Circuit law, a prisoner has a First Amendment right to a diet conforming to his sincerely-held religious beliefs. Beerheide v. Suthers, 286 F.3d 1179, 1185 (10th Cir. 2002). The parties do not dispute that Gelatin Type B is inconsistent with a vegetarian diet, and the record contains evidence that plaintiff may have received Gelatin Type B during his incarceration while he subscribed to a religiously-based vegetarian diet. Specifically, Neuschafer's response to plaintiff's first grievance admits that Hutchinson's gelatin mix contained Gelatin Type B, but incorrectly concluded that the mix is favorable to a vegetarian diet. Such evidence suggests that at some point, Aramark served Gelatin Type B to the entire prison population. The record contains no specific evidence, however, whether Aramark served Gelatin Type B to plaintiff or (if so) how often plaintiff consumed it.

Although the record suggests that Aramark may have served Gelatin Type B to plaintiff at some unknown time, it contains no evidence which implicates Warden Bruce in any constitutional violation. Warden Bruce argues that he is not liable for any violation of the First Amendment because institutional

---

[4] The Court previously dismissed plaintiff's official capacity claim against Warden Bruce on the basis of sovereign immunity, see Memorandum And Order (Doc. #45) filed May 8, 2007 at 3, leaving only plaintiff's individual capacity claim. A successful assertion of qualified immunity would therefore absolve Warden Bruce of liability.

dietary programs – including manufacturing, purchasing and review of the food items which inmates receive – are governed by state standards over which he has no control.  As the supervisor responsible for ensuring that Aramark complied with DOC diet mandates, Warden Bruce is liable for any First Amendment violation under Section 1983 only if he "personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." Jenkins v. Wood, 81 F.3d 988, 995 (10th Cir. 1996).  The record contains no evidence that Warden Bruce personally directed that plaintiff receive non-vegetarian gelatin.  Warden Bruce's liability must therefore be premised on his actual knowledge of and acquiescence in Aramark's continued service of non-vegetarian gelatin.  In this regard, inaction may suffice to establish acquiescence by a supervisor in a constitutional violation.  Serna, 455 F.3d at 1153 (tacit authorization of offending acts creates affirmative link to establish supervisor liability); Sellers v. Butler, No. 02-3055-DJW, 2005 WL 713571, at *8 (D. Kan. Mar. 29, 2005) (citing Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)) (inaction may demonstrate acquiescence under Section 1983).

As noted above, the record contains evidence that plaintiff may have received Gelatin Type B some time before Neuschafer issued his response to plaintiff's first grievance on March 21, 2005.  The record also contains uncontroverted evidence, however, that by March 31, 2005, the Hutchinson facility used only gelatin mix which did not contain animal byproducts.  See Affidavit of William Cummings, attached as Exhibit 5 to Martinez Report (Doc. #16) filed January 8, 2007 ¶ 5 ("It does not appear that as of March 31, 2005 any gelatin containing animal byproducts was available to be served at the Hutchinson Correctional Facility."); see also Exhibit 17 to Martinez Report (Doc. #16) at 2 (as of Neuschafer's response to plaintiff's second grievance on April 25, 2005, "Aramark uses a purveyor that manufactures a non-animal product gelatin"); Affidavit of Rusty Anderson, attached as Exhibit 3 to

Martinez Report (Doc. #16) ¶¶ 1, 3 (since Anderson became Aramark director on May 10, 2005, "the gelatin served to inmates has been the type which uses no animal byproducts and uses a seaweed product called carrageenan").  It is also uncontroverted that Warden Bruce first learned of the possibility that Aramark had served non-vegetarian gelatin when he received plaintiff's appeal on June 2, 2005.  The record clearly reflects that plaintiff could not have received Gelatin Type B after March 31, 2005, making it impossible for Warden Bruce to acquiesce in any First Amendment violation when he later received actual notice of the alleged violation in June of 2005.  In sum, plaintiff has not created a genuine issue of material fact whether in June of 2005, Warden Bruce acquiesced in any continuous wrongdoing so as to create supervisory liability under Section 1983.  Because plaintiff has not established that Warden Bruce violated his First Amendment rights, Warden Bruce is entitled to qualified immunity on plaintiff's claim.

**IT IS THEREFORE ORDERED** that the Motion For Summary Judgment (Doc. #56) which Warden Bruce filed June 6, 2007 be and hereby is **SUSTAINED**.

Dated this 28th day of November, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge