IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **EMEL SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 06-3146-KHV |
| **L. E. BRUCE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Under 42 U.S.C. § 1983, Emel Smith, *pro se*, brings suit against Aramark Correctional Services, L.L.C. ("Aramark") alleging a violation of the First Amendment.[1] This matter comes before the Court on the <u>Defendant Aramark Correctional Services LLC's Motion For Summary Judgment</u> (Doc. #104) filed May 2, 2008. For reasons stated below, the Court overrules the motion.

**Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material

---

[1] The Court previously dismissed plaintiff's claims under the Eighth and Fourteenth Amendments for failure to state a claim, see <u>Memorandum And Order</u> (Doc. #26) filed March 23, 2007 at 3, and granted summary judgment on the First Amendment claim against Warden L. E. Bruce, see <u>Memorandum And Order</u> (Doc. #72) filed November 28, 2007 at 6-9.

In addition to Aramark, the complaint names Doug Neuschafer, former Aramark food service manager. The pretrial order, however, does not include any claims against Neuschafer. <u>See</u> <u>Pretrial Order</u> (Doc. #106) filed May 20, 2008. Specifically, Aramark is the only defendant which appears in the pretrial order, and plaintiff's theory of recovery alleges a claim against a singular defendant. <u>See id.</u> at 4-5. Because the pretrial order is the controlling document for trial, claims not included in that document are waived even if they appeared in the complaint. <u>Wilson v. Muckala</u>, 303 F.3d 1207, 1215 (10th Cir. 2002); <u>see also</u> <u>Lappin v. Gwartney</u>, No. 99-2292-KHV, 2000 WL 1532765, at *3 (D. Kan. Sept. 18, 2000) (by failing to name defendant in pretrial order, plaintiff abandons claims against that defendant). For this reason, the Court finds that plaintiff has abandoned his First Amendment claim against Neuschafer and dismisses him from the case.

fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

**Factual Background**

The following material facts are uncontroverted:[2]

From October of 2001 until May of 2005, the Kansas Department of Corrections ("DOC") incarcerated plaintiff at the state correctional facility at Hutchinson, Kansas ("HCF"). DOC contracts with Aramark to provide food to state correctional facilities, including HCF. Under DOC policy, food service operations follow a standardized menu which satisfies basic nutritional requirements and accommodates modified diets for medical, dental, mental health and religious purposes. Inmates who are approved for a modified diet for religious reasons receive meals which are consistent with the appropriate diet menu. The vegetarian menu, which is approved by a registered dietitian, has a meal pattern consisting of nuts, vegetables, fruits, legumes, grains, eggs and milk products. At HCF, Aramark serves gelatin as part of its vegetarian diet. Generally, one of two firming agents is used to prepare the gelatin: Gelatin Type B (which is derived from animal byproducts and is not consistent with a vegetarian diet) or carrageenan (which is derived from seaweed and is consistent with a vegetarian diet).

At all times relevant to this action, plaintiff was a practicing Muslim.[3] Generally, Islamic law

---

[2] Plaintiff does not respond to defendant's statement of facts. To the extent that those facts are properly supported under Rule 56(e), Fed. R. Civ. P., the Court accepts them as uncontroverted. See Ellibee v. Hazlett, No. 03-3023-JAR, 2006 WL 3050801, at *2 (D. Kan. Oct. 23, 2006) (*pro se* litigants governed by same procedural rules as other litigants; on summary judgment, Court accepts as true facts which *pro se* litigant does not controvert). As necessary, the Court also incorporates facts from plaintiff's complaint – which he filed under penalty of perjury – and the report which the Hutchinson Correctional Facility prepared pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (Martinez report treated as affidavit; complaint treated as affidavit to extent it alleges facts based on plaintiff's personal knowledge and is sworn under penalty of perjury).

[3] In his deposition, plaintiff testified that he first became a Muslim in 1989. From 1989 (continued...)

prohibits the consumption of certain meat, but does not prohibit all consumption of meat. As part of his Muslim faith, plaintiff is a vegetarian.[4] HCF first added plaintiff to the "Religious Diet Callout" as a vegetarian on October 22, 2001. In May of 2003, plaintiff was removed from the vegetarian diet for "religious diet non-compliance."[5] On October 14, 2003, plaintiff was re-added to the "Religious Diet Callout" as a vegetarian. On December 17, 2003, plaintiff was removed from the vegetarian diet after prison staff saw him consume food from a Mexican buffet. On December 23, 2003, with the authorization of the prison chaplain, plaintiff was re-added to the "Religious Diet Callout" as a vegetarian. Plaintiff has remained on the vegetarian diet since this time. While plaintiff was removed from the vegetarian diet, he consumed only beans and rice.

During his incarceration, another inmate told plaintiff that Aramark was serving gelatin which used Gelatin Type B as the firming agent. On March 4, 2005, plaintiff filed a grievance which stated that "Aramark has been [giving] us meat on the vegetarian diet w[h]ich is Gelatin." Plaintiff attached to this grievance the label from a box of gelatin which used Gelatin Type B and was purportedly served at the prison. He also attached various documents which described gelatin as a derivative of animal by-products. On March 21, 2005, Aramark food service manager Doug Neuschafer responded to plaintiff's grievance as follows: "[t]he gelatin mix that is used at the Hutchinson Correctional

---

[3](...continued)
to 1999, plaintiff considered himself a non-practicing Muslim. For approximately three months in 2000, plaintiff practiced Hindu. By the time plaintiff arrived at HCF, he was a practicing Muslim and he continued to practice Islam throughout his incarceration.

[4]   Many Muslim inmates at HCF were not vegetarians.

[5]   The circumstances of this removal are unclear. The record does not specify what constitutes "religious diet non-compliance." Under prison policy, inmates with special diets were required to sign a daily log of meal receipts. Those inmates could refuse the special diet, but would not receive a replacement meal and could be removed from the special diet for missing more than two meals in a three day period.

Facility is from a company called Gilster-Mary Lee. The ingredients in the mix are as follows: Sugar, Dextrose, Gelatin Type B, Sodium Citrate, Fumaric Acid, natural and Artificial Flavor, Tricalcium Phosphate, Color (Red 40)."[6] Neuschafer concluded that the mix had been approved by State of Kansas dieticians to be "favorable" to a vegetarian diet. Neuschafer recommended that no further action be taken.

Before plaintiff filed his grievance in March of 2005, he had consumed gelatin which he alleges contained Gelatin Type B. Once he learned that Aramark was serving Gelatin Type B, plaintiff did not consume any gelatin. The record contains no evidence how much gelatin plaintiff consumed before hearing that it was Gelatin Type B. Since March 31, 2005, Aramark has served only vegetarian gelatin to staff and inmates at HCF.

On April 25, 2005, plaintiff filed a second grievance which restated his complaint that gelatin was not vegetarian-friendly. Plaintiff again attached documents describing gelatin as an animal derivative. The same day, Neuschafer issued a response which stated that "Aramark uses a purveyor that manufactures a non-animal product gelatin. The gelatin that is served does not contain any animal by-products in its ingredients . . . . The gelatin that is served is a vegetarian friendly food product and can be consumed by any vegetarian participant. It has been approved by the state of Kansas Department of Corrections as a viable vegetarian meal item."

Plaintiff alleges that Aramark violated his First Amendment right to freedom of religion by

---

[6] The Martinez report concludes that Neuschafer's response was mistaken about the contents of the gelatin. Specifically, it finds "no indication that any intentional act was undertaken to feed vegans a gelatin containing any animal byproducts, notwithstanding a grievance response from an Aramark supervisor who may not have understood the issue." While Aramark attempts to distance itself from Neuschafer's statement, the Court construes the record in the light most favorable to plaintiff, the non-moving party.

serving him Gelatin Type B which was inconsistent with the vegetarian diet to which he subscribed as part of his religious beliefs. Aramark seeks summary judgment on this claim.

## Analysis

Plaintiff claims that Aramark violated his First Amendment rights by serving him Gelatin Type B. Aramark argues that it is entitled to summary judgment because (1) plaintiff's religious beliefs are not sincerely held, (2) it did not personally participate in any constitutional violation, and (3) it was not deliberately indifferent to plaintiff's constitutional rights.

**I.    Sincerity Of Plaintiff's Religious Beliefs**

Under Tenth Circuit law, a prisoner has a First Amendment right to a diet conforming to his sincerely-held religious beliefs. Beerheide v. Suthers, 286 F.3d 1179, 1185 (10th Cir. 2002). Aramark argues that it is entitled to summary judgment because plaintiff's religious beliefs are not sincerely held. Specifically, Aramark argues that Muslims are not required to follow a vegetarian diet and that plaintiff has not consistently practiced the Muslim faith.

The inquiry into the sincerity of a plaintiff's religious beliefs is "almost exclusively a credibility assessment," and is not readily susceptible to summary judgment. Kay v. Bemis, 500 F.3d 1214, 1219 (10th Cir. 2007) (quoting Snyder v. Murray City Corp., 124 F.3d 1249, 1352-53 (10th Cir. 1997)). Indeed, "summary dismissal on the sincerity prong is appropriate only in the very rare case in which the plaintiff's beliefs are so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection." Id. (internal quotations and brackets omitted). This is not the rare case where the Court can determine that plaintiff's claimed religious beliefs are a sham. While vegetarianism may not be a central tenet of Islam, the First Amendment protects genuine and sincere religious dietary practices even if they are not doctrinally required. Id. (citing LaFevers v.

Saffle, 936 F.2d 1117, 1119 (10th Cir. 1991)). With regard to the consistency of plaintiff's adherence to the Muslim faith, the record contains evidence that plaintiff was a practicing Muslim during his entire incarceration at HCF. Although plaintiff was removed from the vegetarian diet on two occasions, the prison chaplain authorized him to receive a vegetarian diet for religious purposes in December of 2003 – 15 months before he filed his grievance – and the record does not reveal any departure from his practice of the Muslim faith, or the vegetarian diet to which he subscribed as part of that faith, since that time. Even when plaintiff was removed from the vegetarian diet, he continued to eat only beans and rice in conformity with the vegetarian diet. On this record, the Court cannot find as a matter of law that plaintiff did not subscribe to a vegetarian diet as part of his sincerely held religious beliefs. Aramark's motion for summary judgment on this ground is overruled.

## II. Personal Participation

For liability to attach under Section 1983, plaintiff must establish defendant's direct personal responsibility for the claimed deprivation of a constitutional right. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006). Aramark argues that it is entitled to summary judgment because it did not personally participate in the First Amendment violation.

Under Section 1983, a corporate entity cannot be held vicariously liable for the acts of its servants. Baker v. Simmons, 65 Fed. Appx. 231, 234 (10th Cir. 2003). A private corporation performing a government function is liable under Section 1983 where plaintiff shows a direct causal link between the corporation's policy or custom and the injury alleged. Alvarez-Flores v. Shelton, No. 05-3261-CM, 2007 WL 2461619, at *1 (D. Kan. Aug. 23, 2007) (citing Smedley v. Corr. Corp. of Am., 175 Fed. Appx. 943, 946) (10th Cir. 2005)); see also Young v. Martinez, No. 07-cv-01222-WYD, 2008 WL 793575, at *2-3 (D. Colo. Mar. 21, 2008) (Aramark liable under Section 1983 if it

instituted policy which was moving force behind constitutional violation). For purposes of liability under Section 1983, a policy includes any statement, ordinance, regulation or decision which defendant adopts and promulgates through its officers. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). A custom is a practice which is "so permanent and well settled" that it has the force of law. Id. In determining liability based on a policy or custom, the Court applies "rigorous standards of culpability and causation" which require plaintiff to demonstrate deliberate conduct. See Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404-05 (1997).

Although Aramark asserts that "gelatin containing animal byproduct was not served to inmates such as [plaintiff]," Neuschafer's response to plaintiff's first grievance clearly indicates that Aramark regularly served Gelatin Type B at HCF. Admittedly, the record contains conflicting evidence whether Aramark served Gelatin Type B to inmates, but plaintiff is entitled to the benefit of all factual disputes at this stage of litigation. Because Neuschafer's response suggests that at the time of plaintiff's first grievance, Aramark served only Gelatin Type B, the Court infers that Aramark had developed a policy or custom of doing so. Further, the policy or custom of serving Gelatin Type B is directly linked to plaintiff's injury in this case (i.e. the inability to receive a proper vegetarian diet which conformed to his religious beliefs). The record reveals a genuine issue of material fact whether Aramark personally participated in the violation of plaintiff's First Amendment rights through its policy or custom of serving Gelatin Type B to inmates at HCF. Aramark's motion for summary judgment on this ground is overruled.

### III.    Deliberate Indifference

Aramark argues that it is entitled to summary judgment because plaintiff cannot demonstrate that it was deliberately indifferent to his constitutional rights. The case law which Aramark cites in

support of this proposition involves supervisor liability under Section 1983, however, and it is not applicable in this case. Where Section 1983 liability is premised on an official policy or custom, deliberate indifference is required only if plaintiff alleges that the policy or custom "comprised a failure to act." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996). Here, plaintiff claims that Aramark violated his First Amendment rights through an affirmative act (i.e. serving Gelatin Type B). Because this is not a failure to act claim, the Court will not apply the deliberate indifference standard. Aramark's motion for summary judgment on this ground is overruled.

**IT IS THEREFORE ORDERED** that plaintiff's claim against Doug Neuschafer is **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant Aramark Correctional Services LLC's Motion For Summary Judgment (Doc. #104) filed May 2, 2008 be and hereby is **OVERRULED**.

Dated this 31st day of July, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge